**UNITED STATES of America,**
**Plaintiff,**

v.

**Sergio MENDOZA–NAVARRO,**
**Defendant.**

**Criminal Action No. SA–05–CR–175–OG.**

United States District Court,
W.D. Texas,
San Antonio Division.

May 4, 2006.

Molly Lizbeth Roth, Federal Public Defender's Office, San Antonio, TX, for Defendant.

---

Charles L. Jenkins, U.S. Attorneys, San Antonio, TX, for Plaintiff.

### ORDER

ORLANDO L. GARCIA, District Judge.

Pending before the Court is Defendant Sergio Mendoza Navarro's motion to bar a subsequent trial based on his double jeopardy claim and his motion for judgment of acquittal. The Government has filed a response, and Defendant has also filed a reply. After reviewing the record and the applicable law, the Court finds that Defendant's motions should be denied.

Defendant, Mr. Sergio Mendoza Navarro, was charged in a single count indictment of violating 8 U.S.C. § 1326. To obtain a conviction for this offense, the Government must prove the following four elements:

*First:* That the defendant was an alien at the time alleged in the indictment;

*Second:* That the defendant had previously been removed or deported from the United States;

*Third:* That thereafter the defendant knowingly entered or was found in the United States; and

*Fourth:* That the defendant had not received the consent of the Attorney General of the United States to apply for readmission to the United States since the time of the defendant's previous deportation.

The parties stipulated to the last three elements of the offense. Thus, the only issue for trial was the first element: alienage. After receiving testimony on this one remaining element during a one day trial, and after receiving three notes from the jury expressing an inability to reach a verdict, the Court *sua sponte* declared a mistrial.

*Double Jeopardy*

■ The Fifth Amendment to our Constitution provides in part: "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. AMEND. V. The Government should never be given an opportunity to subject one to loss of liberty or freedom a second time for the same offense, except on that occasion when there is a valid basis for a mistrial.

Defendant contends that he has a "valued right to have his trial concluded by a particular tribunal." *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949). Defendant is correct, with certain exceptions under our law. It is true that if the trial is not completed, a subsequent trial of the defendant for the same offense may be grossly unfair. "It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed." *Arizona v. Washington,* 434 U.S. 497, 503–504, 98 S.Ct. 824, 829–830, 54 L.Ed.2d 717 (1978). Further, a subsequent trial may force a defendant to "live in a continuing sense of anxiety and insecurity." *Green v. United States,* 355 U.S. 184, 187–188, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957).

On the other hand, the potential harm of a subsequent trial must be balanced with a strong possibility that "if [the trial judge] fails to discharge a jury which is unable to reach a verdict after protracted and exhausting deliberations, there exists a significant risk that a verdict may result from pressures inherent in the situation rather than the considered judgement of all the jurors." *Arizona,* 434 U.S. at 509, 98 S.Ct.

at 832. "[F]or, if a jury cannot agree, we ought not coerce them by personal suffering, nor ought we to expose parties to the danger of a verdict which is not the result of conviction in the minds of the jury, but produced by suffering of the mind or body." *Arizona*, 434 U.S. at 510 n. 27, 98 S.Ct. 824 (quoting *The Queen v. Charlesworth*, 1 B. & S. at 503–504, 121 Eng. Rep. at 802). Because the ultimate goal in a civilized society is to assure a just and fair judgment, when does the Court declare, and under what circumstances, a mistrial?

### Legal standard

The firmly established law in this area of American jurisprudence is found in *United States v. Perez*, 22 U.S. 579, 9 Wheat. 579, 6 L.Ed. 165 (1824). There, a defendant in a capital case faced the ultimate penalty the law may impose: death. In *Perez*, the Supreme Court held that "the power [to declare a mistrial and discharge a jury] ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes." *Id.* The Court further stated that "the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." *Id.* The Supreme Court, in its wisdom, did not impose or define a rigid precise test in making the assessment as to whether a "manifest necessity" exists, noting that "it is impossible to define all the circumstances which would render it proper to [declare a mistrial]." *Id.*

■ Thus, the law does not mandate a precise set of circumstances that would permit or deny a mistrial, and "manifest necessity" is not a term or concept subject to easy application. What is necessary and plainly obvious to one person may not equal or rise to the same level or degree of necessity to another person. In *Perez*, the defendant faced death. However, regardless of the offense or potential severity of the sentence or punishment, each defendant, when faced with any loss of life or liberty, ought to be accorded the full protection provided in our Constitution.

To afford a balance of competing interests between a defendant and the Government, and with the ultimate goal of a just and impartial verdict in our system of law, we look to our rules of criminal procedure. Rule 26.3 of the Federal Rules of Criminal Procedure provides the following:

> Before ordering a mistrial, the court must give each defendant and the government an opportunity to comment on the propriety of the order, to state whether that party consents or objects, and to suggest alternatives.

Fed.R.Crim.P. 26.3. The rule in essence deters, or should deter, the trial court from acting precipitously or denying both parties from having their case resolved and disposed by the tribunal that they selected. The rule affords the parties an opportunity to discuss alternatives prior to any declaration of a mistrial, which may potentially subject the defendant to a subsequent trial and any attendant negative consequences. To be clear, however, neither the law or the rule prohibits a mistrial when a jury is truly hopelessly deadlocked. To hold otherwise, the only logical conclusion would be to confine the jury indefinitely until their demise. Such a result cannot be contemplated in a civilized society.

### Facts warranting a mistrial in this case

■ In this case, after several hours of deliberation over a simple and uncomplicated element of the offense, the jury issued its first note at 3:30 p.m. stating "We are deadlocked. How late do we go?"

Consistent with the rule, the Court asked each party what course of action they proposed. The Court said: "Let me hear from your proposals concerning an Allen charge, a mistrial, or let me hear your thinking at this time." Both sides requested that no Allen charge be given and that the jury be instructed to further deliberate. The Court then told the jury in open court that they must "continue to deliberate until such time you think necessary and we'll wait here as long as you want. Whatever you all want." Two hours later, at 5:35 p.m., the jury issued a second note stating: "We are deadlocked. One juror needs to leave at six. What is our next step?" The defendant opposed a mistrial and the jury was instructed to return in the morning for further deliberations at 9:00 a.m. The jury returned at 9:00 a.m. and continued deliberations as instructed. At 10:05 a.m., the jury issued its third note stating: "The jury remains deadlocked at this point. I do not believe this will change. Where do we go from here?" The Court then exercised its last option, asking each juror individually whether, if given more time, they could reach a verdict or whether they were hopelessly deadlocked. Having received a unanimous response that they were "deadlocked" or "hopelessly deadlocked," the Court declared a mistrial.

Considering the simple and uncomplicated nature of the sole issue in this case, and considering the length of time the jurors deliberated and their repeated statements and assurances that they were deadlocked, the Court properly exercised its authority and discretion in declaring a mistrial in this case.

For these reasons, and consistent with the law and applicable facts, Defendant's motion to bar a subsequent trial based on his double jeopardy claim and his motion for judgment of acquittal are DENIED.